1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8     RONALD SINGH,                           Case No.  20-cv-02346-VKD

                    Plaintiff,
9
                                              **ORDER GRANTING IN PART**
10            v.                               **PETITIONER'S MOTION FOR**
                                              **TEMPORARY RESTRAINING ORDER**
11    WILLIAM P. BARR, et al.,
                                              Re: Dkt. No. 2
12                  Defendants.

13

14           Petitioner Ronald Singh is a citizen of Fiji who was detained by U.S. Immigration and

15    Customs Enforcement ("ICE") on July 6, 2018 and remains in custody at the Mesa Verde ICE

16    Processing Facility ("Mesa Verde") in Kern County, California.[1]  He filed the present action for

17    habeas corpus relief, claiming that he is being detained under circumstances that violate his due

18    process rights under the Fifth Amendment of the U.S. Constitution.  Pursuant to 28 U.S.C. § 2241,

19    he seeks an order of release from detention, with appropriate conditions of supervision if

20    necessary.  Dkt. No. 1.

21           Presently before the Court is Mr. Singh's motion for a temporary restraining order

22    _____

23    [1] In these proceedings, Mr. Singh has been detained at Mesa Verde and at the Federal Detention
      Center in Honolulu, Hawaii ("FDC Honolulu").  Respondents note that venue generally is proper
24    in the jurisdiction in which an alien is detained.  Nevertheless, they do not dispute that this action
      properly is before this Court insofar as Mr. Singh is detained under the authority of the San
25    Francisco, California Field Office Director.  Additionally, they note that to the extent Mr. Singh
      challenges the March 2, 2020 denial of his request for release on bond, he was arrested and placed
26    in detention by the San Francisco Field Office of ICE Enforcement & Removal Operations.  *See
      Landeros Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *2 (N.D. Cal. Jan. 30,
27    2020) (concluding that venue is proper in the Northern District of California where at least one of
      the respondent officers resides in this district, the petitioner alleged he was placed in detention by
28    the San Francisco Field Office of ICE Enforcement & Removal Operations, and his immigration
      proceedings occurred in San Francisco.)

("TRO"), requesting immediate release, pending the Court's review and determination of his habeas petition.  The parties have fully briefed the matter, including supplemental papers filed with leave of court.  Dkt. Nos. 2-3, 12-14, 17-18, 22.  The matter is deemed submitted for determination without oral argument.  Civ. L.R. 7-1(b); *see also* Dkt. No. 11.  For the reasons discussed below, the motion is granted in part.[2]

## I.    BACKGROUND

### A.    Mr. Singh

Born in Fiji in 1988, Mr. Singh entered the United States in 1989 with his parents when he was an infant.  He was admitted to the United States as a refugee and subsequently was granted asylum in August 2005.  Dkt. No. 1-6 at 10, 17, 20[3]; Dkt. No. 1-8.  His parents have obtained lawful permanent resident status, and Mr. Singh has a younger sister who is a United States citizen by birth.  He says that he has never returned to Fiji and has no family there, and the record indicates that for the most part he has lived with his family in Sacramento, California.  Dkt. No. 1-6 at 10.

Mr. Singh has a criminal record and has been arrested four times.  In 2011, he was arrested for carrying a concealed weapon, carrying a loaded firearm in a public place, and driving under the influence ("DUI").  In 2012, while those charges were pending, Mr. Singh was arrested on charges of possession of a dirk or dagger.  On November 20, 2012, he was convicted of charges resulting from both arrests.  Dkt. No. 1-7 at 30-36; Dkt. No. 12-2 ¶¶ 6-10.

In 2013, while on probation for the two prior convictions, Mr. Singh was arrested on charges of armed robbery in violation of California Penal Code § 211, and battery resulting in the infliction of serious bodily injury in violation of California Penal Code § 243(d).  Dkt. No. 1-6 at 12-13; Dkt. No. 1-7 at 16; Dkt. No. 12-2 ¶¶ 11-12.  Mr. Singh pled "no contest" to the robbery charge under Cal. Penal Code § 211, and was sentenced to six years of imprisonment, which was

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 10.

[3] All pin citations to documents filed in this docket are to the ECF page number that appears in the header of the cited document.

United States District Court
Northern District of California

suspended for time served (364 days), and five years of probation.  Dkt. No. 1-6 at 43; Dkt. No. 12-2 ¶ 12.

In 2015, Mr. Singh violated his probation and was arrested on charges of unlawful taking or driving of a vehicle under California Vehicle Code § 10851(a), receiving a stolen vehicle knowing that it was stolen under California Penal Code § 496d(a), and misdemeanor possession of narcotics paraphernalia under California Health & Safety Code § 11364.  Dkt. No. 1-6 at 13; Dkt. No. 1-7 at 8-10; Dkt. No. 12-2 ¶¶ 14-15.  In October 2015, Mr. Singh admitted violating his probation on the prior robbery conviction and pled no contest to the charge under California Vehicle Code § 10851(a).  His probation was revoked, and he was sentenced to three years on the Vehicle Code § 10851 charge and to six years on the robbery conviction, with the sentences to run concurrently.  Dkt. No. 1-6 at 13; Dkt. No. 12-2 ¶ 16.

Mr. Singh says that he served his sentence and was scheduled to be released on parole, when he was detained by ICE on July 6, 2018.  Dkt. No. 1 ¶ 30; Dkt. No. 1-6 at 13.  He was charged with removability under the Immigration and Nationality Act ("INA") as an alien convicted of an aggravated felony (Dkt. No. 1-8; Dkt. No. 12-2 ¶ 17).  *See* INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

**B.      Immigration Proceedings**

Mr. Singh sought relief from removal.  After several preliminary hearings, the immigration judge ("IJ") held an evidentiary hearing on February 25, 2019.[4]  Dkt. Nos. 1-9, 1-10.  On March 5, 2019, the IJ issued a written decision denying Mr. Singh's applications for relief and ordering him removed to Fiji.  Dkt. No. 1-11 at 12-22.

Mr. Singh appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal in a decision dated August 5, 2019.  Dkt. No. 1-11 at 26-30.  On August 30, 2019, Mr. Singh petitioned the Ninth Circuit for review.  *Id*. at 32.  On January 24, 2020, the Ninth Circuit denied the government's motion to dismiss and for summary judgment, and granted

---

[4] Although each side blames the other for delays in the underlying proceedings, the record indicates that at least some delays are attributable to both sides.  Dkt. No. 1 ¶ 30; Dkt. No. 12 at 20-21.

United States District Court
Northern District of California

1   Mr. Singh a stay of removal, pending review of his petition.  Dkt. No. 1-6 at 76-77.  That matter

2   remains pending before the Ninth Circuit, and the record indicates that Mr. Singh's petition for

3   review is not yet fully briefed.  *See id.*; *see also* Dkt. No. 12 at 5.

4          On January 10, 2020, Mr. Singh requested a bond hearing with the Immigration Court,

5   pursuant to *Casas-Castrillon v. Holder*, 535 F.3d 942 (9th Cir. 2008).  Dkt. No. 1-11 at 2-11.  On

6   February 10, 2020, after holding a hearing, the IJ concluded that she lacked jurisdiction to grant

7   Mr. Singh's request for bond, finding that *Casas-Castrillon* is no longer good law in view of

8   *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  In the alternative, the IJ found that the Department

9   of Homeland Security ("DHS") met its burden to establish that Mr. Singh is a danger to the

10  community.  Dkt. Nos. 1-14, 1-15, 1-17.

11         Mr. Singh appealed the denial of bond to the BIA.  Dkt. No. 1-16.  That appeal remains

12  pending.  According to Mr. Singh, briefing on his appeal is due April 20, 2020, and the BIA

13  typically takes 2-4 months to issue a decision after briefing.  *See* Dkt. No. 1-18 ¶ 8.

14         **C.      COVID-19 Pandemic**

15         The world currently is in the midst of a global pandemic due to the novel coronavirus,

16  COVID-19.  The gravity of the pandemic, as well as the severity of the disease and the ease of its

17  transmission, have been well-documented, including in the findings of a number of courts within

18  this District.  As noted by one court:

19              In a very short period of time, and particularly in the past month,
20              COVID-19 has brought dramatic changes to the country, including
                the State of California's issuance of an order directing all persons
21              living in the state to "stay home" and to "at all times practice social
                distancing."  *See* Cal. Executive Order N-33-20.  The Centers for
22              Disease Control and Prevention ("CDC") likewise has advised all
                person[s] to "stay home as much as possible," to "take everyday
23              precautions to keep space between yourself and others," and to
                "avoid crowds as much as possible," noting that the "risk of
24              exposure . . . may increase in crowded, closed-in settings with little
                air circulation."  *See* www.cdc.gov/coronavirus/2019-ncov/need-
25              extra-precautions/get-ready.html.

26  *Ortuno v. Jennings*, No. 20-cv-02064-MMC, 2020 WL 1701724, at *1 (N.D. Cal. Apr. 8, 2020).

27  Additionally, as noted by another court within this District:

28

United States District Court
Northern District of California

COVID-19 is largely spread through person-to-person contact via respiratory droplets from an infected person. The virus spreads "very easily and sustainably between people," and can be spread by people who are asymptomatic, and from contact with contaminated surfaces. Current studies predict that, depending on the material, the virus can survive on untreated surfaces for between three hours to three days. People with certain underlying health conditions and the elderly are known to be particularly at risk for medical complications related to the disease.

*Bent v. Barr*, No. 19-cv-06123-DMR, 2020 WL 1812850, at *1 (N.D. Cal. Apr. 9, 2020) (footnotes omitted).

## II.      LEGAL STANDARD

A TRO preserves the status quo and prevents irreparable harm until a hearing can be held on an application for preliminary injunction. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction, *see Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001), and as a form of preliminary injunctive relief, a TRO is an "extraordinary remedy" that is "never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, the moving party bears the burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm, and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, a TRO may be appropriate when a movant raises "serious questions going to the merits" of the case and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief also are satisfied. *Id*. at 1134-35.

## III.     DISCUSSION

In his habeas petition, Mr. Singh asserts two separate constitutional claims. First, he argues that prolonged detention without a constitutionally compliant bond hearing violates his

5

United States District Court
Northern District of California

1   procedural due process rights under the Fifth Amendment.  Second, he contends that the

2   conditions of his confinement heighten his risk of exposure to COVID-19 and violate his

3   substantive due process rights under the Fifth Amendment.  Dkt. No. 1.  As discussed, in the

4   present motion for TRO, he seeks immediate release pending the Court's review of his habeas

5   petition and seeks to preserve the status quo with respect to his health, contending that he meets

6   the criteria for immediate injunctive relief as to both of his claims for relief.  Dkt. Nos. 2, 3.

7   Respondents argue that Mr. Singh's motion for TRO must be denied because he does not have

8   standing to bring this action; has not exhausted his administrative remedies; and cannot

9   demonstrate that he is likely to succeed on the merits of his claims.

10      **A.    Standing**

11      Preliminarily, respondents contend that Mr. Singh lacks standing to bring the present

12  action, but they challenge his standing only with respect to his second claim for relief based on

13  COVID-19.[5]  Here, respondents argue that they have not been indifferent to the risks presented by

14  COVID-19, and that officials at both Mesa Verde and FDC Honolulu have taken significant

15  precautionary steps to protect the health and well-being of detainees at these facilities and prevent

16  an outbreak of the virus.  Respondents report the efforts that staff at both facilities are making with

17  respect to sanitization and restrictions on social visitation, as well as screening, testing, and

18  isolating detainees.  Dkt. Nos. 12-1, 17.  Respondents also note that there currently is no evidence

19  of any confirmed cases of COVID-19 at either Mesa Verde or FDC Honolulu.  Dkt. No. 12-1 ¶ 23;

20  Dkt. No. 17 ¶ 17.  As such, respondents contend that Mr. Singh's alleged "injury in fact" is based

21  on a mere abstract concern that he may be exposed to COVID-19 while in detention, and that such

22  speculative concerns do not establish a "particularized" or "concrete" injury sufficient to confer

23  standing.

24      Under Article III of the United States Constitution, federal courts have jurisdiction to

25  decide only actual "Cases" or "Controversies," U.S. Const., art. III, § 2, and Mr. Singh has

26

27  _____

28  [5] Although respondents contend that Mr. Singh's first claim based on prolonged detention and a constitutionally sufficient bond hearing are not at issue, his TRO motion clearly is based on both claims for relief.

1    standing to sue if he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

2    conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

3    *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504

4    U.S. 555, 560-61 (1992). Mr. Singh's claimed injury must be both "particularized" and

5    "concrete." A "particularized" injury is one that "'affect[s] the plaintiff in a personal and

6    individual way.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). A

7    "concrete" injury "must actually exist" and must be "real, and not abstract." *Id*. To assert a

8    "concrete" injury, a plaintiff cannot simply "allege a bare procedural violation, divorced from any

9    concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. at 1549.

10        Mr. Singh has submitted an uncontested statement from Dr. Robert Greifinger, M.D., a

11   physician who attests that he has worked in health care for prisoners and detainees for more than

12   30 years, and who opines about the serious risks concerning COVID-19 in jails, prisons, and

13   detention centers. Dkt. No. 1-19. Indeed, the growing consensus among courts is that the risks of

14   COVID-19 are serious, even without a confirmed case of the virus at the particular facility where a

15   petitioner is detained, and that detainees have standing to bring claims that the conditions of their

16   confinement put them at risk of contracting the disease. *See Perez v. Wolf*, No. 5:19-cv-05191-

17   EJD, 2020 WL 1865303, at *12 (N.D. Cal. Apr. 14, 2020) ("The mere fact that no cases have been

18   reported in the Aurora Facility is irrelevant—it is not a matter of *if* COVID-19 will enter the

19   facility, but *when* it will be detected there.") (citing cases); *Doe v. Barr*, No. 20-cv-02141-LB,

20   2020 WL 1820667, at *8 (N.D. Cal. Apr. 12, 2020) (same) (citing cases); *Bent*, 2020 WL

21   1812850, at *3 (same); *Ortuno*, 2020 WL 1701724 at *2. At least one court has observed that

22   without evidence that detainees are able to meaningfully practice social distancing, "the structure

23   of detention facilities, which are designed to house multiple people in close proximity, render any

24   sanitation efforts somewhat meaningless as detainees cannot social distance. This is problematic

25   because social distancing is regarded by many as one of the most important steps of stopping the

26   spread." *Perez*, 2020 WL 1865303 at *12. There is no evidence that Mr. Singh is able to

27   meaningfully practice social distancing at Mesa Verde. Accordingly, this Court finds that Mr.

28   Singh has raised more than a speculative concern and that he has standing to assert his claim that

United States District Court
Northern District of California

1    the conditions of his confinement subject him to a heightened risk of being exposed to COVID-19.

2      **B.**  **Exhaustion of Administrative Remedies**

3       With respect to his procedural due process claim based on his continued detention

4    following his recent bond hearing, respondents contend that Mr. Singh's motion for TRO should

5    be denied because he seeks to bypass the administrative review process and has not exhausted his

6    administrative remedies.  Mr. Singh does not dispute that his appeal regarding the IJ's denial of

7    bond remains pending before the BIA.  Nevertheless, he contends that under the circumstances

8    presented here, the exhaustion requirement should be waived.

9       "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."

10   *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  Although 28 U.S.C. § 2241, the statute

11   under which Mr. Singh filed his habeas petition, "does not specifically require petitioners to

12   exhaust direct appeals before filing petitions for habeas corpus," as a prudential matter, petitioners

13   are required to exhaust available administrative remedies before seeking relief under § 2241.

14   *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (internal quotations and citation omitted).

15   "Although courts have discretion to waive the exhaustion requirement when it is prudentially

16   required, this discretion is not unfettered."  *Id*. at 998.  "Lower courts are, thus, not free to address

17   the underlying merits without first determining the exhaustion requirement has been satisfied or

18   properly waived."  *Id*.

19      Courts may require prudential exhaustion when:

20       (1) agency expertise makes agency consideration necessary to
         generate a proper record and reach a proper decision; (2) relaxation
21       of the requirement would encourage the deliberate bypass of the
         administrative scheme; and (3) administrative review is likely to
22       allow the agency to correct its own mistakes and to preclude the
         need for judicial review.
23

24   *Hernandez*, 872 F.3d at 988 (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

25   Ordinarily, where a petitioner fails to prudentially exhaust required administrative remedies, the

26   district court should either dismiss the petition without prejudice or stay the proceedings until the

27   petitioner has exhausted remedies.  *Id*.  "Nonetheless, even if the three *Puga* factors weigh in favor

28   of prudential exhaustion, a court may waive the prudential exhaustion requirement if

'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Id.* (quoting *Laing*, 370 F.3d at 1000). Mr. Singh argues that the Court should waive the prudential exhaustion requirements here. Dkt. No. 13.

Mr. Singh must show that at least one of the *Laing* waiver considerations applies in order for the Court to excuse his compliance with prudential exhaustion requirements. *See Perez*, 2020 WL 1865303 at *6 (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018)). He has done so here by demonstrating futility and irreparable harm. Insofar as Mr. Singh challenges the constitutionality of 8 U.S.C. § 1226(c) as applied in his case, such constitutional challenges exceed the jurisdiction of the BIA. *See Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005) ("Because the BIA does not have jurisdiction to resolve constitutional challenges, however, due process claims—other than those alleging only 'procedural errors' within the BIA's power to redress—are exempt from this administrative exhaustion requirement."); *Doe*, 2020 WL 1820667 at *8 (concluding that waiver of the exhaustion requirement was required where "the petitioner's claim of entitlement to a bond hearing is based on the Fifth Amendment (as opposed to being grounded in a statutory entitlement), and thus exceeds the jurisdiction of the immigration courts and the BIA."). Moreover, while respondents note that appeals from detained individuals such as Mr. Singh are given priority, *see* 8 C.F.R. § 1003.1(e)(8), they also acknowledge that there is no deadline by which the BIA must decide his appeal. Dkt. No. 12 at 14. Although the record demonstrates that the government is not responsible for all of the delay in his administrative proceedings, the fact remains that he has now been detained for about 20 months. Mr. Singh has received a bond hearing, but claims that he was denied due process in connection with that hearing. In view of the length of Mr. Singh's detention and the uncertainty regarding the BIA's future resolution of his appeal, waiver of the administrative exhaustion is appropriate. *See Birru v. Barr*, No. 5:20-cv-01285-LHK, 2020 WL 1899408 at *4 (N.D. Cal. Apr. 16, 2020); *Perez*, 2020 WL 1865303 at *6.

### C. Entitlement to a TRO

#### 1. Likelihood of Success on the Merits

##### a. Procedural Due Process Claim

As discussed above, Mr. Singh contends that he has been detained for a prolonged period and that his prolonged detention without a constitutionally compliant bond hearing violates his procedural due process rights under the Fifth Amendment. First, Mr. Singh contends that the IJ erred in concluding that *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008) is no longer good law and that she therefore erroneously concluded that she lacked jurisdiction to grant his request for release on bond. Second, Mr. Singh contends that the IJ applied the wrong legal standard and failed to consider evidence in her alternate holding that DHS met its burden to establish that he presents a danger to the community.

###### i. *Casas-Castrillon*

In essence, the parties dispute the current statutory authority for Mr. Singh's detention. There are several different provisions of the INA that authorize the government to detain noncitizens during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). "These statutes are different textually and in their application," and "apply at different stages of an alien's detention." *Aleman Gonzalez v. Barr*, — F.3d —, No. 18-16465, 2020 WL 1684034, at *3 (9th Cir. Apr. 7, 2020) (internal quotations and citation omitted). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008); *see also Aleman Gonzalez*, 2020 WL 1684034, at *3 (same).

Relevant to the issues presented in Mr. Singh's habeas petition, detention under § 1226(a) is discretionary, and a detainee held pursuant to that provision is entitled to a bond hearing and may be released if the IJ determines that the detainee would not pose a danger to property or persons and is likely to appear at any future proceeding. *See Birru*, 2020 WL 1899408 at *5. By contrast, detention under § 1226(c) is mandatory and allows for release only for witness protection purposes. *Id.* Detainees held pursuant to this statutory provision generally do not have the

10

United States District Court
Northern District of California

1  opportunity to apply for release on bond or parole.  *Id.*

2       Although the parties do not dispute that Mr. Singh initially was detained by ICE pursuant

3  to § 1226(c), they disagree whether his detention continues pursuant to § 1226(c) or whether the

4  authority for his detention has shifted to § 1226(a).  Mr. Singh contends that because the BIA

5  dismissed his appeal of the IJ's removal order, and because his petition for review of the removal

6  order is pending before the Ninth Circuit, authority for his detention has shifted to § 1226(a)

7  pursuant to *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008).  In *Casas-*

8  *Castrillon*, the Ninth Circuit held that mandatory detention under § 1226(c) applies for a limited

9  time and authorizes detention of a noncitizen only until the BIA issues a final removal order.

10  *Casas-Castrillon*, 535 F.3d at 948; *see Birru*, 2020 WL 1899408 at *6 ("Indeed, in *Casas-*

11  *Castrillon*, the Ninth Circuit explained that 8 U.S.C. § 1226(c) only authorizes detention of a

12  noncitizen until the BIA issues a final removal order.").  "Thereafter, the Attorney General's

13  detention authority rests with § 1226(a) until the alien enters his 'removal period,' which occurs

14  only after [the Ninth Circuit has] rejected his final petition for review or his time to seek such

15  review expires."  *Casas-Castrillon*, 535 F.3d at 948 (citing *Prieto-Romero*, 534 F.3d at 1064-65).

16       As noted above, in his immigration proceedings, Mr. Singh requested a bond hearing based

17  on *Casas-Castrillon*.  Dkt. No. 1-11 at 2-7.  The IJ held a hearing and ultimately determined that

18  she lacked jurisdiction to grant release on bond, finding that *Casas-Castrillon* is abrogated by

19  *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  Dkt. Nos. 1-15, 1-17.  Specifically, the IJ noted that

20  *Jennings* rejected the Ninth Circuit's application of the doctrine of constitutional avoidance when

21  it found that petitioners detained under certain statutes were entitled to periodic bond hearings

22  where the government bears the evidentiary burden.  Dkt. No. 1-17 at 3.  Mr. Singh maintains that

23  *Casas-Castrillon* remains good law, whereas respondents argue that the IJ correctly ruled that

24  *Casas-Castrillon* does not survive the Supreme Court's decision in *Jennings*.[6]  Specifically,

25  respondents argue that *Casas-Castrillon* has been abrogated by the conclusion in *Jennings* that

26

27  _____
[6] For present purposes neither side has addressed whether it is significant that the IJ distinguished *Casas-Castrillon* factually on the ground that the petitioner was a permanent legal resident, but Mr. Singh has not obtained that status. Dkt. No. 1-17 at 4.

28

United States District Court
Northern District of California

1    "'together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must

2    continue 'pending a decision on whether the alien is to be removed from the United States.'"  Dkt.

3    No. 12 at 26 (quoting *Jennings*, 138 S. Ct. at 846).

4         *Casas-Castrillon* remains binding upon this Court, unless that decision "is clearly

5    irreconcilable with the reasoning or theory of intervening higher authority."  *Miller v. Gammie*,

6    335 F.3d 889, 893 (9th Cir. 2003).  Although the Ninth Circuit has not squarely addressed whether

7    *Jennings* overruled *Casas-Castrillon*'s conclusion regarding when the statutory authority for

8    detention shifts from § 1226(c) to § 1226(a),[7] at least two courts within this district have

9    concluded persuasively that *Casas-Castrillon* is not clearly irreconcilable with *Jennings*.  *See

10   Birru*, 2020 WL 1899408 at *6–*8; *Hernandez Avilez v. Barr*, No. 19-cv-08296-CRB, 2020 WL

11   1704456, at *3 (N.D. Cal. Apr. 8, 2020).  Indeed, in *Birru*, the court rejected the very argument

12   that respondents present here, noting that *Jennings* "overruled various aspects of the Ninth

13   Circuit's interpretation of the [INA]'s detention provisions," but left intact *Casas-Castrillon*'s

14   conclusion that "that petitioners who are subject to a final removal order and then seek judicial

15   review of that removal order *are no longer within the scope of 28 U.S.C. § 1226(c)*."  *Birru*, 2020

16   WL 1899408 at *7.  "Thus, *Casas-Castrillon* and *Jennings* can be readily harmonized insofar as:

17   (1) *Casas-Castrillon* narrowed the scope of noncitizens who are subject to detention under 8

18   U.S.C. § 1226(c); and (2) *Jennings* then explained the statutory consequences for the noncitizens

19   who continue to fall within the scope of 8 U.S.C. § 1226(c)."  *Id*.; *see also Hernandez Avilez*, 2020

20   WL 1899408, at *3 (explaining that *Jennings* may reasonably be interpreted "to mean that

21   [§ 1226(a) and § 1226(c)] work together to ensure that a noncitizen remains in custody pending

22   judicial review of a final order of removal, because § 1226(c) applies before the order of removal

23   becomes final, and § 1226(a) applies after the order of removal becomes final.  This interpretation

24   is consistent with the holding in *Casas*.").  This Court agrees with the reasoning of *Birru* and

25

26   ─────────────────

27   [7] In *Aleman Gonzalez*, the Ninth Circuit concluded that *Jennings* left intact a different aspect of *Casas-Castrillon*; namely, *Casas-Castrillon*'s conclusion that bond hearings are statutorily mandated by § 1226(a).  But the Ninth Circuit otherwise did not "decide[] what specifically remains of *Casas-Castrillon*'s statutory holding after *Jennings*."  — F.3d —, 2020 WL 1684034, at *20 & n.16.

28

*Hernandez Avilez*, and concludes that *Casas-Castrillon* is not clearly irreconcilable with *Jennings* and remains binding upon this Court.  Mr. Singh therefore has shown a likelihood of success as to his argument that the IJ erred in concluding otherwise.

### ii.       Standard of Dangerousness and Denial of Bond

Nevertheless, as discussed above, the IJ also denied Mr. Singh's request for release on bond on an alternate ground.  She concluded that DHS met its burden to establish that Mr. Singh presents a danger to the community.  Dkt. Nos. 1-15, 1-17.  Mr. Singh argues that the IJ improperly placed the burden on him, rather than the government, to establish that he is not a danger to the community; failed to consider the length of time that had passed since his criminal offenses; and failed to consider evidence of intervening changed circumstances.  Respondents maintain that the IJ properly placed the burden on the government to establish dangerousness, and correctly considered and explained all of the facts and evidence supporting her decision.  Respondents contend that Mr. Singh simply challenges the IJ's discretionary weighing of the evidence, which is beyond the Court's jurisdiction in habeas proceedings.

The Court's jurisdiction to review an IJ's decision is limited:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).  But while "§ 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).  Thus, for example, § 1226(e) precludes review of complaints that an IJ set an excessively high bond amount.  *See Prieto-Romero*, 534 F.3d at 1067.  However, "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Singh*, 638 F.3d at 1202 (internal quotations and citation omitted).

In the present matter, insofar as Mr. Singh argues that the IJ applied the incorrect standard of proof resulting in a violation of due process, he has stated a colorable constitutional claim that is within the Court's jurisdiction to review.  *Singh*, 638 F.3d at 1203.  Indeed, respondents do not

United States District Court
Northern District of California

argue otherwise.  However, "[t]o the extent that [Mr. Singh] asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is unreviewable."  *Sales v. Johnson*, 323 F.Supp.3d 1131, 1138-39 (N.D. Cal. 2017); *see also Slim v. Nielson*, No. 18-cv-02816-DMR, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018) (finding that the IJ was within his discretion to give certain evidence greater weight); *Calmo v. Sessions*, No. C17-07124 WHA, 2018 WL 2938628, at *4 (N.D. Cal. June 12, 2018) ("A district judge may not second-guess the immigration judge's weighing of the evidence.")

The Ninth Circuit has held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing."  *Singh*, 638 F.3d at 1203,[8] *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) ("Case law demonstrates that establishing dangerousness by "clear and convincing evidence" is a high burden and must be demonstrated in fact, not in theory.") (internal quotations and citation omitted).  To determine whether a petitioner detained pursuant to § 1226(a) is a flight risk or danger to the community, IJs should look to a number of factors that may include any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Singh*, 638 F.3d at 1206 n.5 (citation omitted).  "Although an alien's criminal record is surely relevant to a bond assessment," a detainee's "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness.  Rather, the recency and severity of the offenses must be considered."  *Id*. at 1206.  Additionally, *Casas-Castrillon* requires

---

[8] The Ninth Circuit has confirmed that *Jennings* did not invalidate *Singh*'s holding regarding constitutional due process burden of proof.  *Aleman Gonzalez*, — F.3d —, 2020 WL 1684034 at *16.

United States District Court
Northern District of California

1    "individualized bond hearings to ensure that 'the government's purported interest' in securing the

2    alien's presence at removal and protecting the community from danger 'is *actually* served by

3    detention *in [t]his case*,' necessarily anticipating that criminal history alone would not always

4    justify detention." *Id.* (quoting *Casas-Castrillon*, 535 F.3d at 949) (alteration in original).  Thus,

5    "the gravity of the offense, when the offense occurred, and what the immigrant has done since the

6    offense are all factors the IJ must consider when determining whether the [g]overnment has met its

7    'clear and convincing' burden."  *Perez*, 2020 WL 1865303 at *6.

8        Mr. Singh first contends that the IJ erred by "combin[ing] multiple different standards in

9    her analysis," noting that she stated she had "broad discretion" to grant or deny bond and also

10   variously stating that the government or Mr. Singh had the burden to regarding dangerousness.

11   Dkt. No. 3 at 23; Dkt. No. 1-17.  However, courts have recognized that the Attorney General has

12   broad discretion in deciding whether or not to release an alien on bond.  *Ortega-Rangel*, 313 F.

13   Supp. 3d at 1001.  The IJ did state in one portion of her decision that a respondent (i.e., petitioner)

14   bears the burden of establishing that he is not a danger to the community (Dkt. No. 1-17 at 4); but

15   aside from that one remark, her decision otherwise consistently states that the government had the

16   burden of proof.  *See* Dkt. No. 1-17; *see also* Dkt. No. 1-15.  Mr. Singh has not pointed to any

17   other evidence suggesting that the IJ improperly assigned the burden of proof to him.  Without

18   more, the Court finds no error here.

19       Mr. Singh nonetheless contends that in denying bond, the IJ focused exclusively, and

20   improperly, on his criminal convictions and his admitted addiction to methamphetamine.  Mr.

21   Singh further argues that the IJ failed to consider the passage of time since his last conviction and

22   evidence of changed circumstances, namely that since his latest arrest in 2015, he attended

23   substance abuse programming for the first time and has been clean for five years; had no history of

24   disciplinary action while incarcerated; and has processed his addiction with his family.  *See, e.g.*,

25   Dkt. No. 1-6 at 13-17, 20, 23, 56-57; Dkt. No. 1-10 at 56.

26       In denying bond, the IJ did base her decision, in part, on Mr. Singh's criminal convictions.

27   She noted that "[i]n the last ten years, [Mr. Singh] has been convicted of four offenses and spent

28   multiple years in jail or prison."  Dkt. No. 1-17 at 5.  The IJ further noted that Mr. Singh's

offenses, which include DUI, weapons, robbery and vehicle theft offenses, occurred between 2011 and 2015 and "involve[d] an element of danger to either the people or property [of] the United States." *Id.* Contrary to Mr. Singh's arguments, however, the IJ also considered both the passage of time since Mr. Singh's latest conviction and his efforts at rehabilitation. Here, the IJ acknowledged Mr. Singh's claims that after his 2015 arrest, "he has since become sober and attended treatment and rehabilitation classes while in custody," and further noted that "his efforts are well-documented." Dkt. No. 1-17 at 5. Additionally, the IJ "also recognize[d] that [Mr. Singh] has worked with a social worker to create a release plan and has a deep desire to be present for his family." *Id.* Nevertheless, the IJ remarked that because "[Mr. Singh] has been in custody continuously since 2015," she "[could not] find that these efforts are sufficient to outweigh the serious and dangerous nature of [Mr. Singh]'s criminal history prior to his incarceration." *Id.* Although the IJ did not specifically mention each piece of evidence submitted, that "does not overcome the presumption that the IJ satisfied the due process requirement to consider such evidence." *Perez*, 2020 WL 1865303 at *9 (citing *Larita Martinez v. Immigration & Naturalization Serv.*, 20 F.3d 1092, 1096 (9th Cir. 2000)); *see also Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) ("That is not to say that [the IJ] must discuss each piece of evidence submitted. When nothing in the record or the [IJ's] decision indicates a failure to consider all the evidence, a general statement that [the IJ] considered all the evidence . . . may be sufficient."). Here, the IJ stated that she "considered all factors and evidence in [Mr. Singh]'s bond record," and there is no potentially dispositive evidence that required further discussion. *Perez*, 2020 WL 1865303 at *10. Moreover, to the extent Mr. Singh argues that he is entitled to relief because the IJ improperly gave more weight to his criminal history than to subsequent events, for the reasons discussed above, this Court does not have jurisdiction to review such matters in habeas corpus proceedings.

Accordingly, the Court concludes that for purposes of Mr. Singh's present motion for TRO, he has not established a likelihood of success on the merits as to his procedural due process claim. As such, the remainder of this order concerns only Mr. Singh's substantive due process claim based on the COVID-19 pandemic.

United States District Court
Northern District of California

### b.      Substantive Due Process Claim

In view of the COVID-19 pandemic, and claiming that he has conditions that heighten his risk of complications or death from the virus, Mr. Singh argues that his conditions of confinement pose a serious health risk that violates his Fifth Amendment substantive due process rights.  He requests that the Court grant a TRO directing his immediate release pending the Court's review of his habeas petition.  If released, Mr. Singh indicates that he plans to shelter-in-place with his parents in Sacramento.

The Fifth Amendment requires that civil detainees, such as Mr. Singh, "cannot be subjected to conditions that 'amount to punishment.'"  *Bent*, 2020 WL 1812850 at *4 (quoting *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.").  "Accordingly, 'civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'"  *Bent*, 2020 WL 1812850 at *4 (quoting *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012)).  "In the absence of evidence of express intent, a court may infer that the purpose of a particular restriction or condition is punishment if the restriction or condition is not reasonably related to a legitimate governmental objective or is excessive in relation to the legitimate governmental objective."  *Id.* (internal quotations and citation omitted).

Here, the issue presented is whether Mr. Singh is likely to show that, in view of his claimed health conditions, his detention is excessive in relation to the government's needs.  Courts have concluded that this requirement is satisfied where a detainee demonstrates that he has health conditions that put him at high risk of severe illness if infected with COVID-19.  *See, e.g., Perez*, 2020 WL 1865303 at *13 (concluding that the petitioner showed a likelihood of success on the merits where medical records substantiated that he suffers from asthma, hypertension, and latent tuberculosis); *Doe*, 2020 WL 1820667 at *9 (finding a likelihood of success on the merits where records evidenced the petitioner's diagnoses of chronic post-traumatic stress disorder and

depression that compound his susceptibility to COVID-19); *Bent*, 2020 WL 1812850 at *6 (finding irreparable harm where petitioner's medical records demonstrated that he suffered from hypertension and asthma).  *Cf. Ortuno*, 2020 WL 1701724 at *3 (denying motion for TRO for certain petitioners where the record lacked evidence clearly demonstrating a medical condition that placed any of them at a higher risk for severe illness from COVID-19).

Mr. Singh contends that he has been diagnosed with high blood pressure, has a history of smoking, is obese, and has latent tuberculosis.  *See* Dkt. Nos. 1 ¶ 9; Dkt. No. 1-18 ¶ 16; Dkt. No. 22 ¶ 29.  He does not, however, refute respondents' evidence that he does not have "extreme obesity" (i.e., a body mass index of 40 or higher) or that the CDC only lists persons who suffer from "extreme obesity" as being at higher risk.  Dkt. No. 17 ¶ 16; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Respondents also correctly note that Mr. Singh has not presented any medical evidence corroborating his claimed medical conditions,[9] and Mr. Singh acknowledges that a supplemental declaration submitted by his attorney contains hearsay.  Dkt. No. 20.  Courts nonetheless have credited hearsay where doing so serves the purpose of avoiding irreparable harm before trial.  *See Ortuno*, 2020 WL 1701724 at *3 n.3.

In any event, respondents do not refute Mr. Singh's assertion, made through his counsel's declaration, that while at Mesa Verde he was diagnosed with high blood pressure and prescribed Lisinopril.  Dkt. No. 1-18 ¶ 16.  Instead, they contend that the CDC's website does not list hypertension as a high-risk criterion for COVID-19.  Dkt. No. 17 ¶ 16 (citing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html). However, as noted by Mr. Singh and by another court in this District, "another page of the same website does include persons with hypertension in that higher-risk group, *see* www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (listing hypertension as condition 'associated with increased illness severity and adverse outcomes')." *Ortuno v. Jennings*, No. 20-cv-02064-MMC, 2020 WL 1866122 at *1 (N.D. Cal. Apr. 14, 2020);

---

[9] Mr. Singh's counsel advises that she has had some difficulty in timely obtaining his medical records from Mesa Verde and FDC Honolulu.  *See* Dkt. No. 14 ¶ 4.

United States District Court
Northern District of California

*see also* Dkt. No. 3 at 14 n.4.  Additionally, courts have noted the opinion of Dr. Brie Williams,

Professor of Medicine at UCSF with expertise in health issues affecting prisons.  *See United States

v. Daniels*, No. 19-cr-00709-LHK (NC), 2020 WL 1815342, at *3 (N.D. Cal. Apr. 9, 2020) (citing

*United States v. McCoy*, Case No. 19-cr-00067-JD, Dkt. No. 94, Ex. 2 (Affidavit of Brie Williams,

M.D.) at 3).  Dr. Williams states that the CDC recognizes hypertension as a condition that puts

individuals at higher risk of severe illness from COVID-19.  *McCoy*, Case No. 19-cr-00067-JD,

Dkt. No. 94, Ex. 2 (Affidavit of Brie Williams, M.D.) ¶ 16.  Moreover, for the reasons discussed

above, there is no clear indication that Mr. Singh is able to meaningfully practice social distancing

or take other preventive measures in detention.  While the government has a non-punitive and

legitimate purpose in detaining Mr. Singh, e.g., to protect the public and ensure his appearance at

legal proceedings, Mr. Singh has shown that his conditions of confinement pose a serious health

risk that violates his Fifth Amendment substantive due process rights.

### 2.    Irreparable Harm

While conclusory or speculative allegations of harm are insufficient to establish that Mr.

Singh will suffer irreparable harm, for the reasons discussed above, Mr. Singh's allegations of

harm are not speculative or conclusory.  The Court concludes that he has shown that irreparable

harm is likely absent a TRO.

### 3.    Balance of Equities and the Public Interest

"Where the Government is the opposing party, the final two factors in the temporary

restraining order analysis—the balance of the equities and the public interest—merge."  *Bent*,

2020 WL 1812850 at *7 (internal quotations and citation omitted).  Respondents have a legitimate

interest in preventing danger to the community.  "However, courts have recognized the shifting

nature of these interests in light of the COVID-19 pandemic," and "that any risk a detainee poses

to the community requires considering all factors, including the substantial medical and security

challenges [that] would almost certainly arise in the event of a COVID-19 outbreak in a prison or

detention facility."  *Id.* (quoting *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL

1295155, at *2 (S.D.N.Y. Mar. 19, 2020)); *see also Perez*, 2020 WL 1865303 at *13 ("Moreover,

the public interest in promoting public health is served by efforts to contain the further spread of

United States District Court
Northern District of California

COVID-19, particularly in detention centers, which are typically staffed by persons who reside in the local communities.").  Additionally, under the particular circumstances presented here, the Court finds that respondents' concerns can be addressed by releasing Mr. Singh for a temporary period to coincide with California's shelter-in-place order, and by imposing reasonable conditions of release, which the Court anticipates will include at least the following:

1. Mr. Singh shall reside and shelter in place at an address (to be specified in the order setting conditions of release), and he must obey all governmental shelter-in-place orders, regulations and protocols.

2. Mr. Singh shall be transported by a person (to be specified in the order setting conditions of release), from his place of detention to the residence where he will reside and shelter in place.

3. Pending further order of the Court, Mr. Singh shall not leave the residence where he will shelter in place, except to obtain medical care, to appear at immigration court proceedings, or to obey any order issued by DHS.

4. Mr. Singh shall not consume any alcoholic beverages or use or possess any narcotic or other controlled substance without a legal prescription.

5. Mr. Singh shall not possess any firearm, destructive device, or other dangerous weapon.

6. Mr. Singh shall not violate any federal, state, or local law.

## IV.   CONCLUSION

Based on the foregoing, Mr. Singh's motion for TRO is granted in part as follows:

1. Mr. Singh shall be released upon issuance of an order setting conditions of release. The parties' respective counsel shall confer forthwith and propose, in a joint statement to be filed no later than **noon on April 22, 2020**, any additional reasonable conditions of release.

2. Additionally, the parties' respective counsel shall confer and propose, in the joint statement to be filed no later than **noon on April 22, 2020**, a date upon which Mr. Singh will return to ICE custody.  For example, this date could be set to coincide

1    with the expiration of California's shelter-in-place order.

2       3.  This TRO will expire on **May 4, 2020**, unless the parties are able to stipulate to a

3    different date upon which Mr. Singh will return to ICE custody.  If the parties are

4    unable to stipulate to a date upon which Mr. Singh will return to ICE custody, no

5    later than **noon on April 27, 2020**, respondents shall show cause why the TRO

6    should not be converted into a preliminary injunction for the duration of

7    California's shelter-in-place order.

8    **IT IS SO ORDERED.**

9    Dated:  April 20, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge