United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD SINGH,<br><br>        Plaintiff,<br><br>v.<br><br>WILLIAM P. BARR, et al.,<br><br>        Defendants. | Case No. 20-cv-02346-VKD<br><br>**ORDER CONVERTING TEMPORARY RESTRAINING ORDER TO PRELIMINARY INJUNCTION AND MODIFYING TEMPORARY RELEASE CONDITIONS** |

Petitioner Ronald Singh is a citizen of Fiji who was detained by U.S. Immigration and Customs Enforcement ("ICE") in July 2018. In these proceedings, Mr. Singh has been held at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu") and most recently at the Mesa Verde Detention Facility ("Mesa Verde") in Kern County, California. He filed the present action for habeas corpus relief, claiming that he is being detained under circumstances that violate his due process rights under the Fifth Amendment of the U.S. Constitution. First, he argues that prolonged detention without a constitutionally compliant bond hearing violates his procedural due process rights under the Fifth Amendment. Second, he contends that the conditions of his confinement heighten his risk of exposure to COVID-19 and violate his substantive due process rights under the Fifth Amendment. Dkt. No. 1. Pursuant to 28 U.S.C. § 2241, he seeks an order of release from detention, with appropriate conditions of supervision if necessary. *Id*.

On April 20, 2020, the Court granted in part Mr. Singh's motion for a temporary restraining order ("TRO"). Dkt. No. 23. Although Mr. Singh did not demonstrate a likelihood of success on his procedural due process claim, the Court granted his motion for TRO based on his substantive due process claim concerning the conditions of his confinement and the COVID-19

virus. Dkt. No. 23. Mr. Singh has been temporarily released through May 15, 2020, subject to conditions stipulated by the parties and entered as an order by the Court. Dkt. No. 25.

The parties presently are before the Court on an order directing respondents to show cause why the TRO regarding Mr. Singh's temporary release should not be converted to a preliminary injunction for the duration of California's COVID-19 shelter-in-place order. The parties have fully briefed the matter, and the Court held a hearing on May 12, 2020. Dkt. Nos. 26, 29-31, 33, 35, 36. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court converts the prior TRO to a preliminary injunction, extends the period of Mr. Singh's temporary release, and modifies the temporary release conditions.[1]

## I. BACKGROUND

### A. Mr. Singh

Born in Fiji in 1988, Mr. Singh entered the United States in 1989 with his parents when he was an infant. He was admitted to the United States as a refugee and subsequently was granted asylum in August 2005. Dkt. No. 1-6 at 10, 17, 20[2]; Dkt. No. 1-8. His parents have obtained lawful permanent resident status, and Mr. Singh has a younger sister who is a United States citizen by birth. He says that he has never returned to Fiji and has no family there, and the record indicates that for the most part he has lived with his family in Sacramento, California. Dkt. No. 1-6 at 10.

Mr. Singh has a criminal record and has been arrested four times. In 2011, he was arrested for carrying a concealed weapon, carrying a loaded firearm in a public place, and driving under the influence ("DUI"). In 2012, while those charges were pending, Mr. Singh was arrested on charges of possession of a dirk or dagger. On November 20, 2012, he was convicted of charges resulting from both arrests. Dkt. No. 1-7 at 30-36; Dkt. No. 12-2 ¶¶ 6-10.

In 2013, while on probation for the two prior convictions, Mr. Singh was arrested on

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 10.

[2] All pin citations to documents filed in this docket are to the ECF page number that appears in the header of the cited document.

charges of armed robbery in violation of California Penal Code § 211, and battery resulting in the infliction of serious bodily injury in violation of California Penal Code § 243(d). Dkt. No. 1-6 at 12-13; Dkt. No. 1-7 at 16; Dkt. No. 12-2 ¶¶ 11-12. Mr. Singh pled "no contest" to the robbery charge under Cal. Penal Code § 211, and was sentenced to six years of imprisonment, which was suspended for time served (364 days), and five years of probation. Dkt. No. 1-6 at 43; Dkt. No. 12-2 ¶ 12.

In 2015, Mr. Singh violated his probation and was arrested on charges of unlawful taking or driving of a vehicle under California Vehicle Code § 10851(a), receiving a stolen vehicle knowing that it was stolen under California Penal Code § 496d(a), and misdemeanor possession of narcotics paraphernalia under California Health & Safety Code § 11364. Dkt. No. 1-6 at 13; Dkt. No. 1-7 at 8-10; Dkt. No. 12-2 ¶¶ 14-15. In October 2015, Mr. Singh admitted violating his probation on the prior robbery conviction and pled no contest to the charge under California Vehicle Code § 10851(a). His probation was revoked, and he was sentenced to three years on the Vehicle Code § 10851 charge and to six years on the robbery conviction, with the sentences to run concurrently. Dkt. No. 1-6 at 13; Dkt. No. 12-2 ¶ 16.

Mr. Singh says that he served his sentence and was scheduled to be released on parole, when he was detained by ICE on July 6, 2018. Dkt. No. 1 ¶ 30; Dkt. No. 1-6 at 13. He was charged with removability under the Immigration and Nationality Act ("INA") as an alien convicted of an aggravated felony (Dkt. No. 1-8; Dkt. No. 12-2 ¶ 17). *See* INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

**B.     Immigration Proceedings**

Mr. Singh sought relief from removal. After several preliminary hearings, the immigration judge ("IJ") held an evidentiary hearing on February 25, 2019. Dkt. Nos. 1-9, 1-10. On March 5, 2019, the IJ issued a written decision denying Mr. Singh's applications for relief and ordering him removed to Fiji. Dkt. No. 1-11 at 12-22.

Mr. Singh appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal in a decision dated August 5, 2019. Dkt. No. 1-11 at 26-30. On August 30, 2019, Mr. Singh petitioned the Ninth Circuit for review. *Id*. at 32. On January 24, 2020, the

3

1    Ninth Circuit denied the government's motion to dismiss and for summary judgment, and granted
2    Mr. Singh a stay of removal, pending review of his petition. Dkt. No. 1-6 at 76-77. That matter
3    remains pending before the Ninth Circuit, and the record indicates that Mr. Singh's petition for
4    review is not yet fully briefed. *See id.*; *see also* Dkt. No. 12 at 5; Dkt. No. 26 at 14.

On January 10, 2020, Mr. Singh requested a bond hearing with the Immigration Court, pursuant to *Casas-Castrillon v. Holder*, 535 F.3d 942 (9th Cir. 2008). Dkt. No. 1-11 at 2-11. On February 10, 2020, after holding a hearing, the IJ concluded that she lacked jurisdiction to grant Mr. Singh's request for bond, finding that *Casas-Castrillon* is no longer good law in view of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In the alternative, the IJ found that the Department of Homeland Security ("DHS") met its burden to establish that Mr. Singh is a danger to the community. Dkt. Nos. 1-14, 1-15, 1-17.

Mr. Singh appealed the denial of bond to the BIA. Dkt. No. 1-16. That appeal remains pending.

## II.  LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy" that is "never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, the moving party bears the burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm, and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Such relief may be appropriate when a movant raises "serious questions going to the merits" of the case and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief also are satisfied. *Id.* at 1134-35.

While both sides have briefed the present matter under the traditional preliminary injunction factors, insofar as Mr. Singh seeks temporary release pending adjudication of the merits

4

of his habeas petition, courts have held that such relief generally is reserved for extraordinary cases involving special circumstances or a high probability of success. *See Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989); *Zepeda Rivas v. Jennings*, — F.3d —, No. 20-cv-02731-VC, 2020 WL 2059848, at *3 (N.D. Cal. Apr. 29, 2020).

## III.  DISCUSSION

As noted above, the sole question presently before the Court is whether the TRO temporarily releasing Mr. Singh from ICE custody due to the COVID-19 virus should convert to a preliminary injunction (thereby extending his release for some period), or whether Mr. Singh should be returned to ICE custody upon the current expiration of the release period on May 15, 2020. Before addressing whether Mr. Singh meets the requirements for a preliminary injunction, the Court first turns to several threshold matters raised by respondents concerning jurisdiction, standing, and habeas relief.

### A.  Jurisdiction

Respondents argue, for the first time in a footnote in their opening brief, that this Court lacks jurisdiction over this matter and that venue is improper in this district. Relying primarily on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), they contend that habeas petitions must be filed in the district of confinement and must name as a respondent the petitioner's immediate custodian. Dkt. Nos. 26, 31. Here, respondents note that at the time Mr. Singh's habeas petition was filed, he was detained at FDC Honolulu under the authority of the San Francisco ICE Field Director. While the parties briefed Mr. Singh's motion for TRO, he was transferred to Mesa Verde in the Eastern District of California, and respondents contend that his immediate custodian was the Mesa Verde warden, who is not named as a respondent. Respondents acknowledge that they did not raise this issue in their opposition to Mr. Singh's motion for TRO, and that they previously conceded that venue is proper in this district. *See* Dkt. No. 12 at 10 n.1. However, they claim that "to the extent the Court's subject matter jurisdiction is implicated, the issue cannot be waived." Dkt. No. 26 at 8-9 n.1. For the reasons discussed below, respondents have not persuasively demonstrated that this Court lacks jurisdiction over this matter or that venue is improper in this district.

"The immediate custodian rule is the long-held 'default rule' that the proper respondent to

5

a habeas petition challenging present physical confinement 'is the warden of the facility where [a] prisoner is being held, not the Attorney General or some other remote supervisory official.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1183-84 (N.D. Cal. 2017) (quoting *Padilla*, 542 U.S. at 435). In *Padilla*, the Supreme Court applied the immediate custodian rule to a habeas petition filed by a U.S. citizen in military custody within the United States and concluded that the petitioner was required to name his immediate custodian as the respondent. *Padilla* also affirmed "the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 435, 443. However, the Supreme Court noted that it was not using the word "jurisdiction" as synonymous with "subject-matter jurisdiction." *See id.* at 434 n.7 ("The word 'jurisdiction,' of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."); *see also id.* at 452 (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government."). Respondents therefore have not convincingly demonstrated that they are now raising matters implicating this Court's subject matter jurisdiction. Having previously conceded that venue is proper in this district, respondents have waived any objection based on Mr. Singh's failure to name his immediate custodian as a respondent. *See Smith v. Idaho*, 392 F.3d 350 (9th Cir. 2004) (concluding that the district court lacked personal jurisdiction in a matter due to the petitioner's failure to name his immediate custodian as respondent, but that the government waived that defect).

Moreover, *Padilla* declined to address whether the immediate custodian rule applies "to a habeas petition filed by an alien detained pending deportation," *see Padilla*, 542 U.S. at 435 n.8, and there is no conclusive Ninth Circuit authority on the issue.[3] Courts within this district have

---

[3] In a pre-*Padilla* decision, the Ninth Circuit held that in the immigration context, the Attorney General and the Secretary of the DHS are proper respondents. *Armentero v. INS*, 340 F.3d 1058, 1071-74 (9th Cir. 2003). However, the Ninth Circuit later withdrew that opinion and dismissed the appeal on grounds unrelated to the issue of proper respondents. *Armentero v. INS*, 412 F.3d 1088 (9th Cir. 2005).

6

expressed various views regarding the proper respondent in immigration habeas cases, and their analysis generally turns on determining which individual(s) has the authority or power to grant the relief requested by the petitioner. *See, e.g., Saravia*, 280 F. Supp. 3d at 1185 (concluding that for individuals being held at a non-federal facility pursuant to a contract with the federal government, the petition should "name the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ."); *Carmona v. Aitken*, No. 14-cv-05321-JSC, 2015 WL 1737839, at *4 (N.D. Cal. Apr. 10, 2015) (holding that the U.S. Attorney General and the Secretary of the DHS are proper respondents because they are officials "with the actual authority to effectuate the prisoner's release" and "because of their far-reaching authority to administer detention and removal proceedings of noncitizens."). More recently, in a similar habeas matter challenging the petitioner's conditions of confinement in view of COVID-19, another court in this district concluded that a proper respondent is the San Francisco ICE Field Office Director, because that individual "is both within this district and vested with discretionary authority to release Petitioner." *Doe v. Barr*, No. 20-cv-02263-RMI, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020).[4]

In the present matter, Mr. Singh has named as respondents the Acting Secretary of the DHS, the Attorney General of the United States, the Acting Director of ICE, and the Acting Director of the San Francisco ICE Field Office. As discussed above, courts have found that at least one or more of these individuals has the legal authority to provide the relief Mr. Singh seeks and therefore is a proper respondent. Respondents have not contended otherwise. Accordingly, the Court finds no merit in respondents' arguments that it lacks jurisdiction over Mr. Singh's habeas petition. *See Sales v. Johnson*, 323 F.Supp.3d 1131, 1137-38 (N.D. Cal. 2017) ("Because the state of the law is unclear as to whether the Attorney General, Secretary of the [DHS], the Warden, and/or the ICE District Director are proper respondents, and at least one of the named Respondents here has the legal power to provide Petitioner with the requested relief, the Court

---

[4] Respondents cite *Dada v. Witte*, No. 20-1093, 2020 WL 1674129, at *3 (E.D. La. Apr. 6, 2020) in which the district court declined to find that the New Orleans ICE Field Office Director was a proper respondent for purposes of exercising jurisdiction over the petitioner's immigration habeas petition. This Court is not obliged to follow that decision.

DENIES Respondents' motion to dismiss.").

## B. Standing

Although respondents acknowledge that this Court previously rejected their arguments concerning Mr. Singh's standing in its order on his motion for TRO, they reiterate that Mr. Singh lacks Article III standing to pursue his substantive due process claim, arguing that his concerns about exposure to COVID-19 while in detention are merely abstract and speculative. To have Article III standing, Mr. Singh must have suffered an "injury in fact," that is "concrete and particularized, and . . . actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Additionally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (internal quotations and citation omitted). Here, respondents again contend that they have not been indifferent to the risks presented by COVID-19. They claim that in the time since this Court issued its order on Mr. Singh's motion for TRO, officials at Mesa Verde have taken additional measures to promote social distancing and protect the health and well-being of detainees to prevent an outbreak of the virus. *See* Dkt. Nos. 26-1, 35. Noting that there are no suspected or confirmed cases of COVID-19 at Mesa Verde, respondents argue that Mr. Singh has not demonstrated why the Court should find that continued implementation of these protective measures does not reasonably abate the risk presented by the virus.

Even without a confirmed case of COVID-19 at Mesa Verde, for all the reasons stated in this Court's order on Mr. Singh's motion for TRO, the Court concludes that Mr. Singh has Article III standing to assert his substantive due process claim. A number of courts in this district have rejected the same arguments regarding the petitioners' standing in similar cases. *See, e.g. Doe v. Barr*, No. 20-cv-02141-LB, 2020 WL 1820667, at *8 (N.D. Cal. Apr. 12, 2020) (collecting cases). As observed by the Supreme Court, "It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them," and "a remedy for unsafe conditions need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Mr. Singh complains of conditions that pose a non-speculative risk to his health and are sufficient to demonstrate that he has Article III standing, even if Mesa

Verde is taking some preventative measures and has yet to record a case of COVID-19. *See Bent v. Barr*, No. 19-cv-06123-DMR, 2020 WL 1812850, at *3 (N.D. Cal. Apr. 9, 2020) ("Given the exponential spread of the virus, the ability of COVID-19 to spread through asymptomatic individuals, and the inevitable delays of court proceedings, effective relief for . . . detainees may not be possible if they are forced to wait until their particular facility records a confirmed case.").

### C. Habeas Relief

Respondents contend that release from custody is not an appropriate remedy for a habeas claim challenging the conditions of a petitioner's confinement. Dkt. No. 26 at 20 (citing *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979)). Although they deny that Mr. Singh's constitutional rights have been violated, respondents argue that the appropriate remedy for any such constitutional violation would be a court order requiring changes to be made at Mesa Verde, rather than release from detention. While respondents acknowledge that release from custody is one way to mitigate the claimed risks to Mr. Singh's health, they claim that Mesa Verde has been and is making changes to create a safer environment at the facility.

A district court has authority to grant a writ of habeas corpus where an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As noted above, Mr. Singh seeks habeas relief for the alleged violation of his Fifth Amendment rights. While "prisoners may not challenge mere conditions of confinement in habeas corpus," *Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016), "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Mr. Singh's petition does seek release from detention as a form of relief, but the interest advocated in his substantive due process claim is not in release *per se*, but in not being subjected to unconstitutionally hazardous conditions that could adversely affect his health. In a case involving similar allegations of Fifth Amendment violations based on COVID-19 and the conditions of confinement, another court in this district concluded that such claims, properly construed, are challenges to the validity of confinement falling within the court's habeas jurisdiction. *See Bent*, 2020 WL 1812850 at *2. Indeed, as noted in *Bent*, *id.*, other judges have entertained such claims

9

under habeas jurisdiction, including at least one panel of the Ninth Circuit that *sua sponte* ordered the petitioner's immediate release "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers . . .." *Xochihua-Jaimes v. Barr*, 798 Fed. App'x 52 (9th Cir. 2020).  Accordingly, the Court concludes that it properly may entertain Mr. Singh's request for release under habeas jurisdiction.

### D. Entitlement to a Preliminary Injunction

#### 1. Likelihood of Success on the Merits

The Fifth Amendment requires that civil detainees, such as Mr. Singh, "cannot be subjected to conditions that 'amount to punishment.'" *Bent*, 2020 WL 1812850 at *4 (quoting *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.").  "In the absence of evidence of express intent, a court may infer that the purpose of a particular restriction or condition is punishment if the restriction or condition is not reasonably related to a legitimate governmental objective or is excessive in relation to the legitimate governmental objective." *Id.* (internal quotations and citation omitted).

As noted in this Court's order on Mr. Singh's motion for TRO, the primary point of contention is whether Mr. Singh is likely to show that, in view of his claimed health conditions, his detention is excessive in relation to the government's needs.  As presented in their preliminary injunction briefing, the parties also dispute whether respondents are taking reasonable steps to protect detainees from the risk of contracting COVID-19.  Additionally, as noted above, insofar as Mr. Singh seeks temporary release pending adjudication of the merits of his habeas petition, courts have held that such relief generally is reserved for extraordinary cases involving special circumstances or a high probability of success. *See Land*, 878 F.2d at 318; *Zepeda Rivas*, — F.3d —, 2020 WL 2059848, at *3.

##### a. Mr. Singh's Health Conditions

Courts have found a likelihood of success on the merits where a detainee demonstrates that

10

he has health conditions that put him at high risk of severe illness if infected with COVID-19. *See, e.g., Perez v. Wolf*, No. 19-cv-05191-EJD, 2020 WL 1865303 at *13 (N.D. Cal. Apr. 14, 2020) (concluding that the petitioner showed a likelihood of success on the merits where medical records substantiated that he suffers from asthma, hypertension, and latent tuberculosis); *Doe*, 2020 WL 1820667 at *9 (finding a likelihood of success on the merits where records evidenced the petitioner's diagnoses of chronic post-traumatic stress disorder and depression that compound his susceptibility to COVID-19); *Bent*, 2020 WL 1812850 at *6 (finding irreparable harm where petitioner's medical records demonstrated that he suffered from hypertension and asthma). *Cf. Ortuno v. Jennings*, No. 20-cv-02064-MMC, 2020 WL 1701724 at *3 (N.D. Cal. Apr. 8, 2020) (denying motion for TRO for certain petitioners where the record lacked evidence clearly demonstrating a medical condition that placed any of them at a higher risk for severe illness from COVID-19).

Mr. Singh contends that he has been diagnosed with hypertension, is obese, and has latent tuberculosis, as well as a history of smoking. *See* Dkt. Nos. 1 ¶ 9; Dkt. No. 1-18 ¶ 16; Dkt. No. 22 ¶ 29. He has now presented his medical records regarding his conditions. Dkt. Nos. 29-6, 29-9. For present purposes, the parties do not seriously dispute the existence or nature of Mr. Singh's claimed health conditions. For example, respondents do not deny that Mr. Singh has been diagnosed with stage 2 hypertension and has been prescribed Lisinopril. Nor does Mr. Singh claim to meet the criteria for "extreme obesity" (i.e., a body mass index of 40 or higher) that the CDC's website identifies as a risk factor. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. However, the parties disagree whether the nature of Mr. Singh's claimed health conditions, such as they are, place him at higher risk of severe illness or death from COVID-19. Here, respondents contend, in particular, that the CDC's website does not list hypertension as a risk factor, and they argue that hypertension, absent some other condition, does not place an individual at heightened risk of a severe illness from COVID-19. Dkt. No. 26 at 19. They also argue that it is unclear whether the level of severity of hypertension experienced by Mr. Singh places him at risk. Dkt. No. 31.

The CDC's website identifies both "hypertension" and "pulmonary hypertension" as risk

11

factors but does not specify whether or to what extent mild or moderate hypertension poses an increased risk of serious complications from a COVID-19 infection.[5]  In any event, Mr. Singh has also submitted declarations from two physicians, Dr. Goldenson, M.D. and Dr. Keller, M.D., who aver that hypertension places individuals at higher risk with respect to COVID-19, particularly in a detention setting; and Dr. Goldenson opines that Mr. Singh specifically is at risk  *See* Dkt. Nos. 29-5, 29-10; *see also United States v. Roman*, No. 19 Cr. 116 (KMW), 2020 WL 1908665, at *2 (S.D.N.Y. Mar. 27, 2020) (concluding that the fact that the defendant takes Lisinopril to treat his hypertension places him at a higher risk for severe COVID-19 infection).  Respondents have not submitted contrary medical evidence.  The Court concludes that, for present purposes, Mr. Singh has shown that he has at least one underlying health condition that places him at increased risk of serious illness were he to contract COVID-19.

### b.     Mesa Verde Conditions

With respect to the conditions of confinement, no one contends that respondents are obliged to eliminate any possibility that detainees will contract COVID-19.  Rather, there appears to be no dispute that, as respondents themselves acknowledge, "the Constitution requires that [they] take reasonable steps to protect those in their custody from the risk of contracting this disease."  Dkt. No. 26 at 24.  For present purposes of determining whether Mr. Singh has demonstrated a likelihood of success at this stage of the proceedings, the parties dispute whether respondents have taken measures that sufficiently mitigate the risk of exposure to the virus (such that Mr. Singh properly should be returned to custody), or whether conditions still pose an unconstitutional health risk, requiring that his temporary release be extended for some period of

---

[5] *See* www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions ("Serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and *pulmonary hypertension*, may put people at higher risk for severe illness from COVID-19.") (emphasis added); www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% *each* for chronic respiratory disease, *hypertension*, and cancer.  Heart disease, *hypertension*, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes.") (emphasis added; footnotes omitted).

time.

Respondents have submitted declarations from Alexander Pham, an Assistant Field Office Director with the DHS, ICE Enforcement and Removal Operations in the San Francisco Field Office. Mr. Pham describes efforts to protect the health and well-being of detainees at Mesa Verde, including the provision of sanitation supplies and surgical masks, the imposition of restrictions on social visitation, as well as measures to improve the ability to practice social distancing within the facility. Dkt. Nos. 26-1, 35. For example, Mr. Pham states that ICE "has taken affirmative steps to reduce the number of detainees at Mesa Verde, by reconsidering custody determinations, parole requests, and issuing orders of supervision on release for those aliens who are not subject to mandatory custody, pose a danger to the community or flight risk; and/or there is no significant likelihood of removal in the foreseeable future." Dkt. No. 26-1 ¶ 2; Dkt. No. 35 ¶ 2. In his most recent declaration dated May 11, 2020, Mr. Pham states that ICE has reduced the detainee population at Mesa Verde to less than 50% of the facility's 400-detainee capacity, i.e., 191 detainees remain in custody. Dkt. No. 35 ¶ 2. In essence, respondents contend that Mesa Verde is taking steps to promote social distancing at the facility, and that Mr. Singh should be returned to custody so that ICE can make determinations as to which detainees should be released.

Mr. Singh agrees that the facility has made improvements, but nonetheless contends that these efforts are not sufficient. Dkt. No. 36. On the record presented, the Court is inclined to agree that it is not clear whether respondents' efforts are sufficient to allow meaningful social distancing, "regarded by many as one of the most important steps of stopping the spread." *Perez*, 2020 WL 1865303 at *12. This Court's concern is based in part on the fact that some measures described by Mr. Pham, such as staggered bedding in all four dormitories, have not yet been fully implemented. No particular timeline is given for fully achieving those goals, except that Mr. Pham indicates that staggered sleeping arrangements are "being implemented" "when space permits." *See* Dkt. No. 26-1 ¶ 5.i.; Dkt. No. 35 ¶ 3. Moreover, even with a 50% detainee population, it is not clear whether detainees are able to meaningfully practice social distancing throughout the day. And as discussed at oral argument, respondents do not dispute that the detainee population is dynamic, such that while some detainees are being released, others continue

13

to be transferred or brought to the facility. Additionally, as noted above, during the pendency of these proceedings, Mr. Singh has been transferred between at least two detention facilities, FDC Honolulu and Mesa Verde. Thus, notwithstanding the efforts being made at Mesa Verde, there is no indication that Mr. Singh would be housed there if he is returned to ICE custody. The Court concludes that respondents have not shown that they have now put in place reasonable measures to protect detainees like Mr. Singh from contracting COVID-19, and that Mr. Singh has demonstrated a likelihood of success on his claim that conditions still pose an unconstitutional health risk.

Because Mr. Singh seeks temporary release pending adjudication of the merits of his habeas petition, he is required to demonstrate that this is an extraordinary case involving special circumstances or a high probability of success. *See Land*, 878 F.2d at 318; *Zepeda Rivas*, — F.3d —, 2020 WL 2059848, at *3. In view of the current global pandemic, the Court finds that Mr. Singh has made such a showing. *See Zepeda Rivas*, — F.3d —, 2020 WL 2059848, at *3; *Savino v. Souza*, No. 20-10617-WGY, 2020 WL 1703844, at *9 (D. Mass. Apr. 8, 2020). In sum, the Court finds that for purposes of obtaining a preliminary injunction, Mr. Singh raises a substantial claim and has shown that extraordinary circumstances exist, such that temporary release is necessary to ensure that the habeas remedy he seeks can be effective. *See Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2000).

### 2. Irreparable Harm

While conclusory or speculative allegations of harm are insufficient to establish that Mr. Singh will suffer irreparable harm, for the reasons discussed above, Mr. Singh's allegations of harm are not speculative or conclusory. The Court concludes that he has shown that irreparable harm is likely absent a preliminary injunction extending the period of his temporary release.

### 3. Balance of Equities and the Public Interest

Where the government is the opposing party, the final two factors in the preliminary injunction analysis—the balance of the equities and the public interest—merge. *Bent*, 2020 WL 1812850 at *7 (internal quotations and citation omitted). Respondents assert that they have a significant interest in assuring Mr. Singh's appearance at future removal proceedings, as well as in

14

preventing danger to the community.  Noting Mr. Singh's criminal history, respondents reiterate that an IJ has already found him to be a danger to the community.

While this Court cannot second-guess the IJ's determination, the Court nevertheless must consider Mr. Singh's fitness for release at this preliminary injunction stage of the proceedings, taking into account the extraordinary circumstances presented by the global pandemic and the risks Mr. Singh's conditions of confinement pose for his health and the health of the community.

The Court acknowledges that Mr. Singh has a criminal history involving several felonies, one of which includes an assault, and a record of repeated probation violations.  "However, courts have recognized the shifting nature of these interests in light of the COVID-19 pandemic," and "that any risk a detainee poses to the community requires considering all factors, including the substantial medical and security challenges [that] would almost certainly arise in the event of a COVID-19 outbreak in a prison or detention facility."  *Bent*, 2020 WL 1812850 at *7 (quoting *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020)).  The risks Mr. Singh's conduct may pose to the community must be balanced against the risks his confinement in detention poses to his own health and the health of the community.  *Perez*, 2020 WL 1865303 at *13 ("Moreover, the public interest in promoting public health is served by efforts to contain the further spread of COVID-19, particularly in detention centers, which are typically staffed by persons who reside in the local communities.").

In its prior order setting conditions for Mr. Singh's temporary release, the Court addressed these risks, in part, by requiring Mr. Singh to comply with strict location and movement restrictions, including confinement at his parents' home with a few permitted exceptions.  Dkt. No. 25.  Thus far, Mr. Singh, who is being monitored by ICE and by a parole officer of the California Department of Corrections, appears to be complying with the terms of this Court's April 23, 2020 release order.  Dkt. No. 29-11.  The Court has not received any reports to the contrary.  Under the particular circumstances presented here, and for the present time, the Court finds that respondents' concerns can be addressed by extending Mr. Singh's release, subject to all previously imposed conditions, with the following additional condition:

> ICE may not arrest or detain Mr. Singh except (a) upon an order

> permitting arrest issued by this Court (i) for violation of these conditions of release or (ii) based on a discovery by respondents of additional information which demonstrates that Mr. Singh is dangerous, or (b) where there is a final order of removal and a travel document is obtained and where Mr. Singh will be removed within 3 days. ICE must give Mr. Singh's counsel and the Court notice of such arrest or detention on the same day Mr. Singh is detained.

The remaining issue is the duration of Mr. Singh's temporary release. Mr. Singh maintains that he should be released pending this Court's adjudication of his habeas petition on the merits. Respondents seek a more definitive, self-executing end date. They initially proposed that Mr. Singh's release should terminate either when current California state and local shelter-in-place orders are lifted, or on May 29, 2020 when the government expects to resume non-detained group immigration hearings. Dkt. Nos. 26, 31. In more recent briefing, respondents state their preference for a May 29, 2020 release termination date. Dkt. No. 31.

Neither California's shelter-in-place orders, nor the resumption of immigration group hearings are tied to the conditions of detention. Moreover, as discussed at the preliminary injunction hearing, the parties agree that the expiration of this Court's release order should be guided by findings made by the presiding judge in Case No. 3:20-cv-02731-VC, *Zepeda Rivas v. Jennings, et al.*, an action brought on behalf of a conditionally certified class of detainees concerning COVID-19 and the conditions of confinement at Mesa Verde and at the Yuba County Jail.[6] The Court agrees. Accordingly, Mr. Singh's temporary release is extended until otherwise ordered by this Court, or as may be informed by the proceedings in the *Zepeda Rivas* matter and findings made in that action concerning the conditions at Mesa Verde.

## IV. CONCLUSION

Based on the foregoing, the Court converts its prior TRO to a preliminary injunction and extends Mr. Singh's temporary release subject to the following conditions:

1. Mr. Singh shall continue to be subject to GPS monitoring and reporting.
2. Mr. Singh shall continue to reside and shelter in place at 5216 Garfield Avenue #26, Sacramento, California 95841, with his parents Sunit L. Singh and Dhirendra Singh,

---

[6] The Court is informed that a preliminary injunction hearing in the *Zepeda Rivas* matter has been set for June 2, 2020. No. 4:20-cv-02731-VC, Dkt. No. 148.

16

and he must obey all governmental shelter-in-place orders, regulations and protocols.

3. Pending further order of the Court, Mr. Singh shall not leave the residence where he will shelter in place, except to obtain medical care, to appear at immigration court proceedings, or to obey any order issued by the DHS. Additionally, Mr. Singh may leave his residence for the following additional purposes:

   a. If required to physically appear *in propria persona*, Mr. Singh may report to the California Department of Corrections Natomas Parole Unit, 4616 Roseville Road, North Highlands, California 95660 for an evaluation of his rehabilitative needs and a determination of his future parole conditions on the next business day following his release. Immediately thereafter, Mr. Singh will file with the Court and respondents, a copy of any order of supervision or parole conditions. Upon submission of parole terms, the Court's order may be amended to allow Mr. Singh to leave his residence to comply with the any terms of his California Department of Corrections parole which require him to leave his residence, such as mandatory drug-testing, or in-person reporting, if necessary.

   b. Mr. Singh may leave his residence a maximum of two times per week to conduct essential business for his parents and himself. Mr. Singh shall telephonically report to ICE Enforcement and Removal Operations prior to each trip so that any alarm triggered in connection to his GPS ankle monitoring system will be documented in advance.

4. Nothing in this release order limits ICE's ability to remove Mr. Singh from the United States upon an appropriate order of removal, such as a mandate from the Ninth Circuit following resolution of Mr. Singh's petition for review.

5. Mr. Singh shall not consume any alcoholic beverages or use or possess any narcotic or other controlled substance without a legal prescription.

6. Mr. Singh shall not possess any firearm, destructive device, or other dangerous weapon.

7. Mr. Singh shall not violate any federal, state, or local law.

8. In the event that Mr. Singh violates any conditions of release, the Court may, on its own motion or on respondents' motion, modify or terminate any injunctive relief and order Mr. Singh returned to ICE custody.

9. ICE may not arrest or detain Mr. Singh except (a) upon an order permitting arrest issued by this Court (i) for violation of these conditions of release or (ii) based on a discovery by respondents of additional information which demonstrates that Mr. Singh is dangerous, or (b) where there is a final order of removal and a travel document is obtained and where Mr. Singh will be removed within 3 days. ICE must give Mr. Singh's counsel and the Court notice of such arrest or detention on the same day Mr. Singh is detained.

10. Mr. Singh's temporary release is extended until otherwise ordered by this Court, or as may be informed by the proceedings in Case No. 3:20-cv-02731-VC, *Zepeda Rivas v. Jennings, et al.* and findings made in that action concerning the conditions at Mesa Verde.

**IT IS SO ORDERED.**

Dated: May 15, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge